# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Willie Taylor (R-69403), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 20 C 1491 |
| | ) | |
| Kim Larson, | ) | |
| Warden of D.C.C., | ) | |
| | ) | |
| Respondent. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

**CHARLES P. KOCORAS, District Judge:**

Petitioner Willie Taylor, a prisoner at the Danville Correctional Center, brings this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his 2007 convictions for first-degree murder and armed robbery from the Circuit Court of Cook County. (Dkt. 10.) For the reasons discussed below, the Court denies the petition on the merits and declines to issue a certificate of appealability.

# I.    Background[1]

## A.    Petitioner's Bench Trial

Petitioner's convictions arose from the beating death of Willie Green on June 17, 2005. *People v. Taylor*, 2018 IL App (1st) 142540-U, ¶ 5 ("*Direct Appeal*"). Petitioner and at least three other teenagers repeatedly punched the victim with closed fists, threw a garbage can at the victim's head, and stole the victim's "Link" card from his wallet.[2] *Id.* at ¶¶ 5–6, 8, 11, 14. The victim later died from his injuries. *Id.* at ¶ 5. Because Petitioner committed this offense when he was 15 years old and was charged with first-degree murder, he was automatically excluded from prosecution in juvenile court and tried as an adult pursuant to Section 5-130(1)(a) of Illinois's Juvenile Court Act of 1987. *Id.* at ¶ 2; *see* 705 ILCS 405/5-130(1)(a) (eff. Jan. 1, 2003, to Aug. 11, 2005) ("Automatic Transfer Provision") (excluding 15-year-olds charged with certain crimes, including first-degree murder, from the jurisdiction of the juvenile court).

The State presented the following evidence at Petitioner's bench trial. Andre Donner testified that on the night of the beating, he was returning from the gas station

---

[1] The following facts are drawn from the state court record (Dkt. 23) and the state appellate court's decision on direct appeal. *People v. Taylor,* 2018 IL App (1st) 142540-U. The state court's factual findings are presumed correct unless Petitioner rebuts this presumption by clear and convincing evidence. *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1); *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018)); *see also Ward v. Hinsley*, 377 F.3d 719, 721 (7th Cir. 2004) ("[W]e presume the state court's recitation of the facts to be correct.").

[2] In Illinois, "Link" cards are issued to those eligible to receive cash assistance or SNAP benefits (food stamps) and function like debit cards. *Illinois Link Card*, Ill. Dep't of Hum. Services, *available at*: https://www.dhs.state.il.us/page.aspx?item=30371 (last visited June 27, 2022).

in his neighborhood where he had been talking with a friend, Doncell "Chum" Richard. *Direct Appeal*, ¶ 7. He sat down on a fire hydrant at the corner of the street when he heard a man yell, "ah"— "like when something hurt[s] you." *Id.*; (Dkt. 23-10, p. 55.) Donner looked around the corner in the direction of the sound and saw four teenagers attacking an older man. *Direct Appeal*, ¶ 7; (Dkt. 23-10, pp. 57–58.) Donner identified the individuals as Petitioner, Deon Sails,[3] Jonathan Rucker, and A.P. *Direct Appeal*, ¶ 8. He knew Petitioner from school and the neighborhood, and he made an in-court identification of Petitioner at trial. *Id.*

Donner described how the assailants repeatedly punched the victim all over his body—chest, arms, and legs. *Id.*; (Dkt. 23-10, pp. 64–65.) When their blows knocked the victim to the ground, Sails and Rucker picked the victim up by his arms so they could continue beating him. *Direct Appeal*, ¶ 8. The second time they picked the victim up off the ground, Donner observed Petitioner retrieve a garbage can, lift it up over his head, and throw it at the victim's head. *Id.* The victim again fell to the ground where he would remain, unconscious. *Id.* Donner testified that he saw Sails go through the victim's wallet and remove his Link card. *Id.* He watched Sails toss the wallet onto the victim's body as the group walked off together. *Id.* The next day, Donner learned the

---

[3] Petitioner and Sails were tried in simultaneous, severed trials with Petitioner being tried by the trial court and Sails being tried by a jury. *Direct Appeal*, ¶ 6.

beating started because Sails had sold the victim "a dummy" (i.e., a fake bag of cocaine), and the victim wanted his money back. *Id.*

A month later, Donner found out that one of his friends who was not involved in the beating had been taken into police custody for questioning regarding the incident. *Id.* at ¶ 9. Donner went to the police station to inform the police that they had the wrong person. *Id*. He later provided a written statement to the police, naming Petitioner and the three others as the ones who assaulted the victim. *Id.*; (Dkt. 23-19, pp. 3–11.) He also testified regarding his observations before a grand jury. *Direct Appeal*, ¶ 9.

Donner acknowledged that he did not immediately come forward to the police with the information he had regarding the beating, and admitted that he originally told the police and the grand jury that Petitioner was the one who went through the victim's pockets. *Id.* at ¶ 10. He explained that he used to smoke marijuana and suffered from memory loss, but denied smoking on the night of the beating. *Id.*

Doncell "Chum" Richard testified that he was hanging out with friends at the gas station when Donner called to him from down the street that someone was getting beat up. *Id.* at ¶ 11; (Dkt. 23-11, p. 35.) He rode his bike to where Donner was located and observed an older man on the ground surrounded by a group of at least six people. *Direct Appeal*, ¶ 11. Richard explained that he observed at least three or four of them beating the victim, including Petitioner, Sails, Rucker, and A.P. *Id.*; (Dkt. 23-11, pp. 39–46.) He described how Petitioner picked the victim up by his arms and held him up

4

for his co-assailant, A.P., to punch him, and then dropped the victim to the ground. *Direct Appeal*, ¶ 11; (Dkt. 23-11, pp. 39–40, 47–48.) Richard also observed a garbage can lying on the ground near the victim. (Dkt. 23-11, p. 47.) He did not see Petitioner take anything from the victim's pockets. *Direct Appeal*, ¶ 12.

Richard explained that he approached the victim's attackers after the beating and told the group to "get off the block." *Id.* at ¶ 11. A month later, Richard was brought to the police station for questioning about the incident. *Id.* He gave a written statement in which he described that all four offenders punched the victim in the head while he was on the ground, but denied seeing Petitioner hit the victim at trial. *Direct Appeal*, ¶¶ 11–12; (Dkt. 23-17, pp. 3–11.) His statement was otherwise consistent with his trial testimony. *Direct Appeal*, ¶ 11; (Dkt. 23-17, pp. 3–11.) Richard also identified Petitioner, Sails, and Rucker in a line-up. *Direct Appeal*, ¶ 11.

Chiquita Hicks, Richard's sister, testified that she was walking her dog when she saw the beating. *Id.* at 14. She described how the attackers repeatedly struck the victim, at one point holding him up so they could each take turns punching him in the face with their closed fists. *Id.*; (Dkt. 23-11, pp. 220–21.) She further testified that she saw Rucker hit the victim in the head with the garbage can, and observed Rucker and Sails go through the victim's pockets and take what appeared to be keys, an I.D., and a wallet. *Direct Appeal*, ¶ 14; (Dkt. 23-11, pp. 221–24.) Hicks later identified Petitioner as one of the assailants, along with Rucker and Sails, from a line-up. *Direct Appeal,* ¶ 13. Like

5

her brother, she also gave a written statement to the police. (Dkt. 23-18, pp. 3–8.) Hicks admitted that she did not see Petitioner throw a garbage can or go through the victim's pockets. *Direct Appeal*, ¶ 14.

At the completion of trial, Petitioner was found guilty of first-degree murder and armed robbery, and was sentenced to consecutive prison terms of 21 years for his murder conviction and 6 years for his armed robbery conviction. *Direct Appeal*, ¶ 15.

### B. Petitioner's Direct Appeal

In 2015, Petitioner filed a direct appeal that raised the following claims:[4] (1) there was insufficient evidence to convict him for armed robbery under a theory of accountability; (2) Illinois's Automatic Transfer Provision violates the Eighth Amendment, the Proportionate Penalties Clause of the Illinois Constitution, and due process; and (3) the 2016 amendments to the Automatic Transfer Provision, raising the minimum age for automatic transfer of certain juvenile defendants to adult court from 15 years to 16 years, and Section 5-4.5-105 of Illinois's Unified Code of Corrections, requiring additional factors in mitigation when sentencing minors, applied retroactively to Petitioner's case and required resentencing.[5] *Id.*; *see* ILL. CONST. art. I, § 11

---

[4] Prior to filing his direct appeal, Petitioner filed a *pro se* post-conviction petition, alleging his trial counsel was ineffective for failing to perfect his appeal. *Direct Appeal*, ¶ 16. He later filed a second *pro se* post-conviction petition after his first petition was dismissed for not being signed or notarized. *Id.*; (Dkt. 23-8, pp. 135–36.) The trial court docketed this petition and appointed post-conviction counsel, who filed a motion to docket a late notice of appeal based on Petitioner's allegations. *Direct Appeal*, ¶ 16; (Dkt. 23-8, pp. 184–94.) The trial court granted Petitioner leave to file a notice of late appeal and withdrew his post-conviction petition. (Dkt. 23-8, p. 196.)

[5] Based on the State's response brief and the Illinois Appellate Court's decision, it appears Petitioner's third claim was raised in a supplemental brief that is not included in the state court record. *See Direct Appeal*, ¶¶ 35-48; (Dkt. 23-3,

(Proportionate Penalties Clause); 705 ILCS 405/5-130(a)(1) (Automatic Transfer Provision) (eff. Jan. 1, 2016); 730 Ill. Comp. Stat. Ann. 5/5-4.5-105 ("Juvenile Sentencing Provision" under the Unified Code of Corrections) (eff. Jan. 1, 2016, to Dec. 31, 2016). The Illinois Appellate Court rejected Petitioner's arguments and affirmed his convictions.[6] *Direct Appeal*, ¶¶ 49–50.

In his *pro se* petition for leave to appeal ("PLA"), Petitioner raised only the first two claims from his direct appeal, namely: (1) his insufficient evidence claim; and (2) his claim regarding Illinois's Automatic Transfer Provision. (Dkt. 23-6, pp. 1–25.) He did not raise his claim regarding the retroactive application of the 2016 amendments to the Automatic Transfer Provision and Juvenile Sentencing Provision. *Id.* The Illinois Supreme Court denied his PLA on January 31, 2019. *People v. Taylor*, 116 N.E.3d 905 (Table) (Ill. 2019). Petitioner then filed the instant habeas corpus petition. (Dkt. 10.)

## II.    Analysis

Petitioner's Section 2254 petition presents the following claims for this Court's consideration:

Claim 1:            There was insufficient evidence to convict Petitioner
                    for armed robbery under a theory of accountability;

---

pp. 33–48.)

[6] The Court notes that the Illinois Appellate Court issued a decision on Petitioner's claims in 2017, holding that the 2016 amendment to Illinois's Automatic Transfer Provision applied retroactively to Petitioner's case. *People v. Taylor*, 2017 IL App (1st) 142540-U, *opinion superseded on reh'g*, 2018 IL App (1st) 142540-U. This decision was later superseded after the State's motion for rehearing was granted. *Id.*; (Dkt. 23-5.)

Claim 2:        Illinois's Automatic Transfer Provision, which excludes 15- and 16-year-olds from the juvenile court's jurisdiction, violates the Eighth Amendment and due process; and

Claim 3:        The 2016 amendments to Illinois's Automatic Transfer Provision and Juvenile Sentencing Provision applied retroactively to Petitioner's case and required resentencing.

*Id.* at pp. 9–28.

None of Petitioner's claims warrant federal habeas corpus relief as they are either procedurally defaulted and non-cognizable or because the state appellate court's denial of his claims was neither contrary to, nor an unreasonable application of, clearly established federal law.

### A.    Petitioner is Not Entitled to Federal Habeas Relief on Claims One and Two Under § 2254(d)'s Deferential Standard of Review

Claims One and Two were denied on the merits by the Illinois Appellate Court on direct appeal, *see Direct Appeal*, ¶¶ 17–34, making it the operative decision for this Court's review as it is "the last state court to address a given claim on the merits." *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) (citing *Greene v. Fisher*, 565 U.S. 34, 40 (2011); *Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006)). The Court's

review of these claims is governed by 28 U.S.C. § 2254(d)'s deferential standard of review. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under Section 2254(d), federal habeas relief may not be granted unless Petitioner demonstrates that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the state court decision was based on an unreasonable determination of facts in light of the record before the state court. § 2254(d); *see also Harrington v. Richter*, 562 U.S. 86, 100 (2011). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Pinholster*, 563 U.S. at 181 (quoting *Harrington*, 562 U.S. at 102; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)); *see also Shinn v. Ramirez*, 142 S. Ct. 1718, 1731 (2022) ("The writ of habeas corpus is an extraordinary remedy that guards only against extreme malfunctions in the state criminal justice systems.") (internal quotation marks and citations omitted).

Because the Illinois Appellate Court's rejection of Claims One and Two were neither contrary to, nor an unreasonable application of, clearly established federal law, Petitioner is not entitled to relief. *See* § 2254(d).

### i. Claim One: Petitioner's Insufficient Evidence Claim is Meritless

Claim One asserts a sufficiency of the evidence challenge regarding Petitioner's conviction for armed robbery. Petitioner does not dispute his involvement in the beating death of the victim but contends there was no evidence that he participated in robbing the victim, nor evidence that he acted in accordance with a common plan, or with the intent or knowledge that the victim would be robbed. (Dkt. 10, pp. 9–13.) He, therefore, asserts that there was insufficient evidence to convict him for armed robbery under a theory of accountability. *Id.* Respondent is correct that this claim lacks merit. (Dkt. 22, pp. 7–12.)

"The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). In reviewing the state court's ruling on Petitioner's sufficiency of the evidence claim, the Court applies a "twice-deferential standard." *Id.* First, the Court defers to the verdict, as "it is the responsibility of the [finder of fact]— not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). Second, the

Court must defer to the state court's ruling under Section 2254(d)'s highly deferential standard. *See Cavazos*, 565 U.S. at 2 (citing *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

The Illinois Appellate Court applied the correct legal standard in ruling on Petitioner's sufficiency challenge, and thus its decision was not contrary to clearly established federal law. *Direct Appeal*, ¶ 26 (citing *People v. Brown*, 2013 IL 114196, ¶ 48) ("When reviewing a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). That the state court cited to a state court case instead of federal cases is of no consequence as the state court need not cite to or even be aware of the relevant federal cases as long as the state court identifies the proper standard as was done here. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Equally, the state court's rejection of Petitioner's claim was not an unreasonable application of this standard.

Under Illinois law, a person commits armed robbery when "he or she knowingly takes property . . . from the person or presence of another by the use of force or by threatening the imminent use of force" while carrying or "otherwise armed with a dangerous weapon." 720 ILCS 5/18-1(a), 18-2(a)(1). Under the Illinois accountability statute, a defendant is legally accountable for the conduct of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other

11

person in the planning or commission of the offense." 720 ILCS 5/5-2(c).[7] Intent to promote or facilitate may be established by "showing *either* (1) that the defendant shared the criminal intent of the principal, *or* (2) that there was a common criminal design." *People v. Fernandez,* 6 N.E.3d 145, 149, 153 (Ill. 2014) (citation omitted) (emphasis in original). For cases falling under the latter category, "the rule is . . . that where one aids another in the planning or commission of an offense, he is legally accountable for . . . any criminal act done in furtherance of the planned and intended act." *Id.* at 153 (citation omitted). "Evidence that a defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common purpose and will sustain his conviction for an offense committed by another." *Id.* at 149–50 (citation omitted).

The Illinois Appellate Court rejected Petitioner's claim, holding there was sufficient evidence to find Petitioner guilty of armed robbery under a theory of accountability pursuant to the common design rule. *Direct Appeal*, ¶¶ 29, 34. Given the overwhelming evidence of Petitioner's participation in the beating of the victim alongside his co-assailants, the state court's rejection of Petitioner's sufficiency claim was not "objectively unreasonable." *See Cavazos*, 565 U.S. at 2.

---

[7] The language of Illinois's accountability statute has been modified in only minor, non-substantive respects since the offense at issue in this case took place.

All three eyewitnesses testified as to Petitioner's involvement in the crimes against the victim. The evidence showed that Petitioner and his co-assailants repeatedly punched the victim—going so far as to pick his body off the ground so that they could continue to strike him. One witness described how the attackers held the victim up so that they could take turns punching him in the face. And they not only used their fists to inflict their beating, but they also hurled a garbage can at the victim's head. As the victim lay unconscious on the ground after the final blows, one or more of Petitioner's co-assailants went through his pockets and stole his Link card before all four left the scene together. Upon proof that Petitioner attached himself to a group "bent" on these illegal actions, as was clearly demonstrated in this case, he became legally accountable for all the crimes of his co-assailants flowing therefrom, regardless of whether he had knowledge of their intent to rob the victim before leaving the scene. *See Fernandez*, 6 N.E.3d at 153 (explaining the distinction between establishing accountability in shared criminal intent cases versus common design rule cases).[8]

Accordingly, based on the multiple eyewitness accounts presented at Petitioner's trial, it is clear that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt of the armed robbery that followed the beating of the victim under a

---

[8] To the extent Petitioner is challenging the state court's interpretation of the evidence required to establish legal accountability under Illinois law, such a claim is "beyond the reach of a federal court on collateral attack." *Crockett v. Butler*, 807 F.3d 160, 168 (7th Cir. 2015) ("A claim that the state court misunderstood the substantive requirements of state law…does not present a true *Jackson* challenge and is not cognizable under § 2254.") (internal quotation marks and citations omitted).

13

theory of accountability. He is therefore not entitled to federal habeas relief on this claim. Claim One is denied.

ii.    **Claim Two:   Petitioner is Not Entitled to Federal Habeas Relief on his Claim that Illinois's Automatic Transfer Provision Violates the Eighth Amendment and Due Process**

As for Claim Two, Petitioner challenges Illinois's Automatic Transfer Provision on two bases: (1) excluding 15- and 16-year-olds charged with first-degree murder from the juvenile court system violates the Eighth Amendment; and (2) requiring the automatic transfer of certain juvenile offenders to the adult criminal justice system violates substantive and procedural due process. (Dkt. 10, pp. 13–24.) Respondent argues, and correctly so, that neither argument entitles Petitioner to federal habeas relief. (Dkt. 22, pp. 12–13.)

1.    **Illinois's Automatic Transfer Provision Does Not Implicate the Eighth Amendment**

Petitioner first argues Illinois's Automatic Transfer Provision is "cruel and unusual" in violation of the Eighth Amendment, equating the statute to a "mandatory penalty scheme" that exposes certain juvenile offenders to the harsh realities of the adult criminal justice system. (Dkt. 10, pp. 14–15, 18–19.) He further contends the statute runs afoul of the Supreme Court's rulings in *Roper v. Simmons*, 543 U.S. 551 (2005),

14

*Graham v. Florida*, 560 U.S. 48 (2011), and *Miller v. Alabama*, 567 U.S. 460 (2012). *Id.* at 14–15.

*Roper* and its progeny form a line of Supreme Court precedent addressing how the Eighth Amendment's ban on cruel and unusual punishment applies in juvenile sentencing. Recognizing that children are "constitutionally different from adults," *Miller*, 567 U.S. at 471, the Supreme Court held that the Eighth Amendment prohibits imposing the death penalty, *Roper*, 543 U.S. at 578, life sentences without the possibility of parole for non-homicide offenses, *Graham*, 560 U.S. at 82, and mandatory sentencing schemes that impose life sentences without the possibility of parole for homicide offenses, *Miller*, 567 U.S. at 489, on juvenile offenders.

Petitioner, however, does not challenge the sentence that was imposed in his case; rather he challenges the statutory procedure by which he was exposed to the adult criminal justice system. Petitioner cannot rely upon a line of cases that does not clearly establish the legal proposition that he advances in this claim. *See Long v. Pfister*, 874 F.3d 544, 549 (7th Cir. 2017) (en banc) ("The Justices insist that a principle be made concretely applicable to the problem at hand before it may be used on collateral review."). When, as here, the Supreme Court has not provided a clear answer on the issue, relief under Section 2254(d) is not available. *Wright v. Van Patten*, 552 U.S. 120,

126 (2008) (per curiam); *Carey v. Musladin*, 549 U.S. 70, 76 (2006). Petitioner

therefore cannot obtain federal habeas relief on his Eighth Amendment claim.[9]

### 2. In the Absence of Clearly Established Federal Law, Petitioner is Not Entitled to § 2254 Relief on his Due Process Claim

Petitioner further argues the Automatic Transfer Provision violates substantive

and procedural due process. He contends the statute implicates his substantive due

process rights because *Roper* and its related cases created a fundamental liberty interest

that protects juveniles from being automatically transferred to the adult criminal court

system. (Dkt. 10, pp. 15–16.) He further asserts the statute deprives juveniles of

---

[9] It is worth noting that the Supreme Court recognized in *Miller* that several states had statutes that allowed the automatic transfer of juvenile homicide offenders to adult criminal court, including Illinois. 567 U.S. at 487 & n.15. *Miller*, however, did not rule on the constitutionality of these provisions; rather, its ruling was limited to mandatory sentencing schemes that required the imposition of life-without-parole sentences on juvenile offenders where the sentencing court was not afforded the opportunity to first consider the offender's status as a juvenile before making a determination as to the appropriate sentence. 567 U.S. at 479, 483.

Although Petitioner asserts that, as a result of Illinois's Automatic Transfer Provision, juveniles transferred to adult court face mandatory sentencing schemes, his assertions are framed as general examples regarding the experiences of juveniles who are prosecuted in adult criminal court. He does not specifically challenge the sentence that was imposed in his case, nor the sentencing judge's performance in determining his sentence.

And, for sake of argument, even if Petitioner had raised such challenges, they would be meritless as his 27-year sentence does not constitute a life sentence, nor is it a *de facto* life sentence (i.e., a sentence so long that it equates to a life sentence). *See Mitchell v. Greene*, 2021 WL 1998237, at *8 (N.D. Ill. May 18, 2021), *certificate of appealability denied*, 2021 WL 5709898 (7th Cir. Oct. 26, 2021) (collecting cases wherein the Seventh Circuit has held "that juveniles who would be first eligible for release starting in their fifties (or even their seventies) did not receive *de facto* life sentences"); *see also Sanders v. Eckstein*, 981 F.3d 637, 641 (7th Cir. 2020) (denying Section 2254 relief in the absence of "controlling Supreme Court authority that *Miller* requires a sentencing judge to consider a juvenile offender's youth and its attendant circumstances before imposing a sentence other than a *de jure* or *de facto* life-without-parole sentence").

16

procedural due process because they are not afforded the opportunity to be heard before being transferred to adult criminal court. *Id.* at 17.

Here, too, Petitioner's apparent reliance on *Miller, Graham,* and *Roper*, is misplaced, as these cases established only that certain types of punishments may not be imposed on juvenile offenders under the Eighth Amendment. *Roper*, 543 U.S. at 578 (juvenile death penalty); *Graham,* 560 U.S. at 82 (juvenile life-without-parole for non-homicide offenses); and *Miller*, 567 U.S. at 489 (juvenile mandatory life-without-parole for homicide offenses). The only mention of the due process clause in these cases was reference to the Fourteenth Amendment's incorporation of the Eighth Amendment to the states. *Roper*, 543 U.S. at 560; *Graham*, 560 U.S. at 53. It is not surprising that Petitioner cannot cite to other Supreme Court precedent in support of his claim as there is no case that clearly establishes a fundamental right to juvenile prosecution for juvenile defendants. *See United States v. Lopez*, 860 F.3d 201, 210 n.2 (4th Cir. 2017) (citing *United States v. Juvenile*, 228 F.3d 987, 990 (9th Cir. 2000) ("There is no constitutional right to be tried as a juvenile.")); *Woodard v. Wainwright*, 556 F.2d 781, 785 (5th Cir. 1977) ("[T]reatment as a juvenile is not an inherent right but one granted by the state legislature.") (5th Cir. 1977); *United States ex rel. Carter v. Transcoso,*, 2011 WL 1636994, at *11 (N.D. Ill. Apr. 28, 2011), *aff'd sub nom. Carter v. Thompson*, 690 F.3d 837 (7th Cir. 2012) (denying § 2254 petitioner's procedural due process claim, explaining *Roper* and *Graham* contained "no direct holding that an automatic transfer

17

provision such as [Illinois's]" constitutes a violation of the right to due process). Because there is no Supreme Court rule directly on point, Petitioner is not entitled to Section 2254 relief on his due process claim. *See Van Patten*, 552 U.S. at 126; *see also Baird v. Davis*, 388 F.3d 1110, 1115 (7th Cir. 2004) ("Ordinarily of course a litigant can ask a lower federal court for an innovative constitutional interpretation…[b]ut that path is closed when the case before the court is an application for habeas corpus relief.") (citations omitted).

In sum, in the absence of any rules announced by the Supreme Court that squarely address the merits of Petitioner's Automatic Transfer Provision arguments, the state court's rejection of his claim was not "contrary to or an unreasonable application of clearly established federal law." *See Carey*, 548 U.S. at 77. Claim Two is therefore denied.

**B. Claim Three: Petitioner is Not Entitled to Relief on Claim Three Because His Claim is Procedurally Defaulted and Non-Cognizable on Federal Habeas Review**

In Claim Three, Petitioner challenges the state court's decision to reject a resentencing in accordance with the 2016 amendments to Illinois's Automatic Transfer Provision or, alternatively, the Juvenile Sentencing Provision under the Unified Code of Corrections. (Dkt. 10, pp. 24–28); *see* 705 ILCS 405/5-130(1)(a); 730 ILCS 5/5-4.5-105. He contends that, under Illinois law, both provisions applied retroactively to his case because they are procedural in nature, therefore entitling him to a resentencing.

18

(Dkt. 10, pp. 26–28) (citing *Caveney v. Bower*, 797 N.E.2d 596, 601–02 (Ill. 2003) (providing that Section 4 of Illinois's Statute of Statutes, 5 ILCS 70/4, "represents a clear legislative directive as to the temporal reach of statutory amendments and repeals: those that are procedural in nature may be applied retroactively, while those that are substantive may not"). Respondent is correct that his claim is procedurally defaulted and non-cognizable. (Dkt. 22, pp. 14–15.)

> **i.      Claim Three is Procedurally Defaulted Because Petitioner Failed to Raise the Issue Through One Complete Round of State Court Review**

To preserve a claim for federal habeas review, a petitioner must first "'exhaust[ ] the remedies available in the courts of the State.'" *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016) (quoting 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires Section 2254 petitioners to "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts" and is accomplished "by invoking one complete round of the State's established appellate review process," which in Illinois, includes a PLA to the state supreme court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Should a petitioner fail to fairly present his federal constitutional claim to the state courts, and can no longer do so under the state's procedural laws, his claim is procedurally defaulted and, consequently, barred from federal habeas review unless he demonstrates one of the exceptions to procedural default—(1) cause for the default and

actual prejudice or (2) a fundamental miscarriage of justice would result absent federal habeas review, i.e., new evidence shows the petitioner is actually innocent. *Thomas*, 822 F.3d at 384, 386 (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Despite Petitioner's assertions to the contrary, he did not raise Claim Three through one complete round of state court review. (Dkt. 10, p. 28.) His retroactive application argument and resentencing claim were raised in his direct appeal and presented to the Illinois Appellate Court. *See Direct Appeal*, ¶¶ 35–48. But he failed to present the claim to the Illinois Supreme Court in his direct appeal PLA. (Dkt. 23-6, pp. 1–26) (Petitioner's PLA on direct appeal argued only Claims One and Two). Claim Three is thus procedurally defaulted. *See Boerckel*, 526 U.S. at 845.

Nor can Petitioner excuse the procedural default of his claim under either the cause-and-prejudice or actual innocence exceptions. First, Petitioner makes no showing of cause to excuse the default of his claim, and none is suggested by the record. *See Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("To establish 'cause' . . . the prisoner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'")). Second, Petitioner neither argues, nor can establish, actual innocence. "To pass through the actual-innocence gateway to a merits review of a procedurally barred claim, the petitioner must have 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

20

evidence—that was not presented at trial,'…and must persuade the district court that it is 'more likely than not that no reasonable juror would have convicted [Petitioner] in light of the new evidence.'" *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) (quoting *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995)). Petitioner provides no new evidence to demonstrate that he is innocent as multiple eyewitnesses testified to his participation in the crime. He therefore cannot excuse the procedural default of Claim Three.

### ii.    Claim Three Challenges the State Court's Application of State Law and Thus is Non-Cognizable on Federal Habeas Review

Beyond the procedural default, Petitioner is not entitled to federal habeas on his retroactive application claim because his argument raises a non-cognizable issue of state law. Petitioner challenges the state appellate court's determination that the 2016 amendments to Illinois's Automatic Transfer Provision and Juvenile Sentencing Provision did not apply retroactively to his case. (Dkt. 10, pp. 24–28.) In reaching its decision, the state appellate court relied on the Illinois Supreme Court's decision in *People v. Hunter*, 104 N.E.3d 358 (Ill. 2017), which declined to extend the retroactive application of the Automatic Transfer Provision to a case pending on direct appeal where there was no independent basis for remanding the case for further proceedings to which the amendment could apply, and affirmed the limited temporal reach of the Juvenile Sentencing Provision to sentencing hearings "on or after the effective date" of

21

the statute. *Hunter*, 104 N.E.3d at 366, 369–70 (quoting 730 ILCS 5/5-4.5-105(a)); *see Direct Appeal*, ¶¶ 45, 47.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)). "Whether a state must make retroactive changes in state law, however, is itself ordinarily a matter of state law." *Gladney v. Pollard*, 799 F.3d 889, 897 (7th Cir. 2015). In other words, "[s]tates are free to choose whether a change in state law is retroactive without running afoul of the federal Constitution." *Id.* at 897–98 (citation omitted).

Because Petitioner's claim involves only a challenge to the state court's application of state law and does not raise a federal constitutional issue, it is non-cognizable on federal habeas review. *Perruquet v. Briley*, 390 F.3d 505, 511 (2004) ("[E]rrors of state law in and of themselves are not cognizable on federal habeas review."); *Gladney*, 799 F.3d at 898 ("[A] 'federal court may not issue the writ on the basis of a perceived error of state law.'") (citation omitted); *see Hildenstein v. Enloe*, 2016 WL 1029376, at *4 (S.D. Ill. Mar. 15, 2016) ("Any claim that the state court was wrong in holding [a state's judicial decision] does not apply retroactively is not cognizable here."). Petitioner is therefore not entitled to federal habeas corpus relief on Claim Three.

For the reasons stated above, this Court cannot grant federal habeas corpus relief for any of Petitioner's claims. His Section 2254 petition is denied.

### III.    Certificate of Appealability and Notice of Appeal Rights

Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Petitioner wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

The Court declines to issue a certificate of appealability. A certificate of appealability "may not issue 'unless the applicant has made a substantial showing of the denial of a constitutional right.'" *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (quoting 28 U.S.C. § 2253(c)). This requires a showing that reasonable jurists could debate whether this Court should have resolved Petitioner's claims differently or that the issues were "adequate to deserve encouragement to proceed further." *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing *Slack*, 529 U.S. at 484) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Petitioner cannot meet this standard.

## IV.    Conclusion

Petitioner's habeas corpus petition (Dkt. 10.) is denied on the merits. Any other pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Clerk is instructed to: (1) terminate Respondent Kim Larson, (2) add Petitioner's current custodian, Felicia Adkins, Warden, Danville Correctional Center, as Respondent; (3) alter the case caption to *Taylor v. Adkins*; and (4) enter a Rule 58 judgment in favor of Respondent and against Petitioner. Civil Case Terminated.

Dated: July 7, 2022

Charles P. Kocoras
United States District Judge